**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**JAMES SMITH,**

**Plaintiff,**

**v.** **CIVIL ACTION NO. 1:26-cv-2 (KLEEH)**

**HARRISON RURAL ELECTRIFICATION ASSOCIATION, INC. and TERRY STOUT, Individually and in his official capacity,**

**Defendants.**

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 5]**

Pending before the Court is *Defendants' Motion to Dismiss Plaintiff's Complaint* [ECF No. 5]. For reasons stated herein, Defendants' Motion [ECF No. 5] should be **GRANTED** in part and **DENIED** in part.

## I. PROCEDURAL HISTORY

Plaintiff James Smith ("Plaintiff") filed a Complaint against Defendants Harrison Rural Electrification Association, Inc. ("HREA") and Terry Stout ("Defendant Stout") on Jan. 5, 2026. ECF No. 1. Plaintiff alleges seven causes of action: Count I: Violation of the Enhancement of Contractor Protection from Reprisal Statute[1] (41 U.S.C. § 4712); Count II: Violation of False Claims Act Anti-

[1] Plaintiff alleges a violation of the Federal Whistleblower Protection Act but cited the Enhancement of Contractor Protection from Reprisal Statute. See 41 U.S.C. § 4712. This memorandum will address 41 U.S.C. § 4712.

Retaliation Provision (31 U.S.C. § 3730(h)); Count III: West Virginia Public Policy Wrongful Discharge – Reporting Fraud and Waste; Count IV: West Virginia Public Policy Wrongful Discharge – Reporting Violations of Federal and State Law; Count V: Breach of Implied Employment Contract; Count VI: West Virginia Wage Payment and Collection Act Violations (W.Va. Code § 21-5-1 *et seq.*); and Count VII: Promissory Estoppel/Detrimental Reliance. Id.

Defendants filed *Motion to Dismiss Plaintiff's Complaint* ("Motion") [ECF No. 5] and *Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint* [ECF No. 6] on Feb. 26, 2026. Plaintiff filed *Plaintiff's Response in Opposition* on March 20, 2026 [ECF No. 11], to which Defendant replied [ECF No. 12] on March 27, 2026. In the Motion, Defendants request that Plaintiff's Complaint be dismissed with prejudice. ECF No. 5. The Motion is fully briefed and ripe for review.

## II. FACTS

Plaintiff is the former employee of HREA, whose general manager was Defendant Stout. ECF No. 1 at ¶¶ 1, 11. HREA is a federal grantee, receiving $20 million in federal funds from the United States Department of Agriculture ("USDA") for fiber optic infrastructure and installation and operates under the federal Rural Electrification Act of 1935. Id. Plaintiff served as Human Resources ("HR") Manager for nearly five years before he was terminated on March 28, 2025. Id. at ¶ 1-2.

Plaintiff states in the Complaint that HREA written board policies govern employee conduct, whistleblowing, retention of legal counsel, board approvals for personnel decisions, performance evaluations, compensation, and termination. Id. at ¶ 12.

Plaintiff alleges that around March 2024 he reported fraudulent activity by Defendant Stout to HREA Accounting Manager Christy Cleghorn. Id. at ¶ 19. Among these allegations were (1) Plaintiff discovered in the course of his employment that Defendant Stout sold a 2012 Dodge 5500 bucket truck worth $40,000-$50,000 to former board president and current HREA board member Jeff Nelson for 7-8% market value at $3,300, (2) Defendant Stout manipulated his personal leave accruals to secure a $100,000 retirement payout, in violation of HREA policy, (3) Defendant Stout gave his personal acquaintance and neighbor, Ty Chapman, a substantial raise and promotion without board approval or performance evaluation, which was required by HREA policy, and (4) Defendant Stout used HREA equipment to monitor HREA members' and employees' spouses' internet activity without their consent. Id. at ¶¶ 14-18. Plaintiff also informed HREA Board President Bill Suan of these activities on Dec. 15, 2024. Id. at ¶ 19.

After Plaintiff reported this activity, Cleghorn received a 10% pay raise in January 2025. Id. at ¶ 24. Also in January 2025, one of Plaintiff's coworkers asked him if he had been "demoted."

Id. at ¶ 27. Furthermore, a new warehouse position was created and filled in Feb. 2025. Id. at ¶ 25. On March 28, 2025, Plaintiff was terminated due to "lack of cash flow." Id. at 30. Plaintiff's job was terminated without board approval. Id. This civil action followed.

## III. LEGAL STANDARD

### a. Rule 12(b)(6) of the Federal Rules of Civil Procedure

Rule 12(b)(6) allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992). Dismissal is appropriate only if "it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969).

## IV. DISCUSSION

Defendant filed its Motion to Dismiss with Prejudice [ECF No. 5] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 5. For the following reasons, Defendant's Motion is **GRANTED** in part **DENIED** in part.

### A. Defendant's motion to dismiss is DENIED as to Count I because Plaintiff has properly pled the allegations and the failure to exhaust defense cannot be considered in this case.

Defendant's motion to dismiss is **DENIED** because Plaintiff has properly pled protected disclosures of gross mismanagement, gross waste of funds, and abuse of authority, and violation of a law, rule, or regulation related to federal funds. Furthermore, Defendant's affirmative defense of failure to exhaust administrative remedies cannot be considered in this motion because the necessary facts do not appear on the face of the complaint. A claimant under 41 U.S.C. § 4712 must exhaust administrative remedies prior to filing suit in federal court. Robertson v. Intratek, 976 F.3d 575, 580 (5th Cir. 2020). However,

failure to exhaust administrative remedies is widely regarded as an affirmative defense that need not be anticipatorily pled by plaintiffs. Jones v. Bock, 549 U.S. 199, 212 (2007).

Defendant asserts that Plaintiff has not exhausted all administrative remedies in its Motion. ECF No. 5 at p. 3. Plaintiff contends, however, that failure to exhaust administrative remedies cannot warrant dismissal under Fed. R. Civ. Pro. 12(b)(6) if all facts necessary to the defense do not appear on the face of the complaint. ECF No. 11, at p. 5. Nonetheless, Plaintiff attaches a complaint and an email receipt to his Response showing that he filed a complaint with the Office of the Inspector General for the USDA. Id., Ex. 1. The "Date" line of the complaint is left empty, and Plaintiff does not include the date of when he filed this complaint. Id.

The first question before this Court is whether the motion to dismiss Count I is governed by Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). For the claim to be governed by 12(b)(1), the statutory provision requiring administrative exhaustion must be jurisdictional. Louise Trauma Center LLC v. United States Citizenship and Immigration Services, 147 F.4th 495, n. 1 (4th Cir. 2025). An administrative exhaustion requirement is jurisdictional "[o]nly if the statutory text 'plainly show[s] that Congress imbued a procedural bar with jurisdictional

consequences.'" Stewart v. Iancu, 912 F.3d 693, 700 (4th Cir. 2019) (quoting United States v. Kwai Fun Wong, 575 U.S. 402, 410 (2015)).

The Fourth Circuit has not yet decided whether 41 U.S.C. § 4712's exhaustion requirement is jurisdictional, but a majority of courts that have engaged in this analysis have found the requirement to be non-jurisdictional. See Jacobs Project Management Co. v. United States Department of the Interior, 64 F.4th 123 (3rd Cir. 2023) (holding that 41 U.S.C. § 4712's timing requirements for exhaustion of administrative remedies are non-jurisdictional, in part for lack of jurisdictional consequences); Olson v. Microsoft Corporation, 2025 WL 2664321, No. 3:25-cv-0774-D *2-3 (Sept. 17, 2025 N.D. Tex) (same). Thus, the motion to dismiss Count I should be governed by Rule 12(b)(6).

Under Rule 12(b)(6), a court may consider documents "integral and explicitly relied on in the complaint" without converting a motion to dismiss into a motion for summary judgment. Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222-23 (4th Cir. 2009).

Here, Defendant's assertion that Plaintiff has not exhausted administrative remedies cannot be resolved because the proper facts do not appear on the face of the Complaint, and Plaintiff's attached receipt of filing a complaint with the Inspector General cannot be considered. First, the Complaint does not reference exhaustion of administrative remedies or the fact that Plaintiff filed a Complaint. See ECF No. 1. Although Plaintiff attached the

complaint he filed with the Inspector General of the USDA and the receipt of such filing, this document cannot be considered because it is not explicitly relied upon in the Complaint.[2] See id. Thus, the affirmative defense of failure to exhaust administrative remedies cannot be considered here and this Court must look to the merits of the claim.

41 U.S.C. § 4712 is the whistleblower protection provision of the National Defense Authorization Act ("NDAA"). 41 U.S.C. § 4712(a)(1) provides that:

> An employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

41 U.S.C. § 4712(a)(1). Thus, to state a claim for relief under this statute, an employee of a federal grant recipient must plead facts sufficient to show that (1) he "reasonably believe[d] he was

---

[2] Even if the receipt and complaint could be considered for this motion, it would not be dispositive because Plaintiff does not provide the date that the complaint was filed. See ECF No. 3, Ex. 1. Under the statute, Plaintiff must give the Inspector General at least 210 days to produce a report before remedies are "exhausted." 41 U.S.C. § 4712(c)(2).

disclosing evidence" of "gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority . . . or a violation of a law, rule, or regulation related to a Federal contract" (2) he made a protected disclosure of such evidence to someone described in 41 U.S.C. § 4712(a)(2), and (3) "the protected disclosure was a 'contributing factor' to an adverse personnel action." Patel v. Credence Mgmt. Sols., No. 120CV00427RDAJFA, 2021 WL 5447526, at *4(E.D. Va. Nov. 22, 2021). See also Prichard v. Metro. Wash. Airports Auth., No. 1-18-cv-1432, 2019 WL 5698660, at *12 (E.D. Va. Nov. 4, 2019) (listing the elements of a prima facie case under 41 U.S.C. § 4712); 41 U.S.C. § 4712.

The NDAA has commonly been compared to other whistleblower protection acts for interpretation purposes, as pointed out by the Fifth Circuit:

> "The NDAA is a relatively newer statute with scant interpretive case law." Shea v. Mgmt. & Training Corp., 580 F.Supp.3d 389, 392 n.2 (W.D. Tex. 2022) (internal quotation marks and citation omitted). Accordingly, courts evaluating NDAA retaliation claims often draw upon the analytical frameworks of other federal whistleblower provisions. See, e.g., id. at 392-93 (citing Wallace v. Andeavor Corp., 916 F.3d 423, 426-47 (5th Cir. 2019) and Craine v. Nat'l Sci. Found., 687 F. App'x 682, 691 (10th Cir. 2017), which analyze whistleblower-retaliation claims under the Sarbanes-Oxley Act); Fuerst v. Housing Authority of City of Atlanta, Georgia, 38 F.4th 860, 872-73 (11th Cir. 2022)] (citing Lachance v. White, 174 F.3d 1378, 1381 (Fed. Cir. 1999)

> and White v. Dep't of Air Force, 391 F.3d 1377, 1382 (Fed. Cir. 2004), which analyze whistleblower-retaliation claims under the Whistleblower Protection Act); DuPage Reg'l Off. of Educ. v. U.S. Dep't of Educ., 58 F.4th 326, 351 (7th Cir. 2023) (same, citing Kewley v. Dep't of Health & Hum. Servs., 153 F.3d 1357, 1361-62 (Fed. Cir. 1998) and Whitmore v. Dep't of Lab., 680 F.3d 1353, 1367 (Fed. Cir. 2012)).

Beltran v. Lockheed Martin Corporation, No. 25-10808, 2026 WL 788905, at n. 2 (5th Cir. March 20, 2026) (per curiam). Here, a comparison of the NDAA and the Whistleblower Protection Act of 1989 ("WPA") is useful to this Court. First, both statutes prevent retaliation against employees for legal disclosures of information. See generally 5 U.S.C. § 2302; 41 U.S.C. § 4712(a)(1). More specifically, both the NDAA and the WPA prohibit federal agencies from retaliating against employees for disclosing information "which the employee reasonably believes" is "a gross waste" of funds or "an abuse of authority," among other things. 5 U.S.C. § 2302(b)(8);[3] 41 U.S.C. § 4712(a)(1). This similarity in

[3] "Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—take or fail to take or threaten to take or fail to take, a personnel action with respect to any employee or applicant for employment because of—

> (a) Any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—
> (i) Any violation of any law, rule, or regulation, or
> (ii) Gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety . . ."

5 U.S.C. § 2302(b)(8).

purpose and statutory language allows this Court to apply case law interpreting the WPA to the language of the NDAA, as both the Eleventh and Seventh Circuits have done. See Fuerst, 38. F.4th 860; DuPage, 58 F.4th 326. Additionally, both statutes are governed by the burdens of proof specified in 5 U.S.C. § 1221(e). See 5 U.S.C. § 1221; 41 U.S.C. § 4712(c)(6). Thus, it follows that interpretations of 5 U.S.C. § 1221 in the context of the WPA can reasonably be applied to the NDAA as well.

**1. Reasonable belief**

Under the NDAA, a protected disclosure occurs when an employee reports information that they "reasonably believe" to be evidence of conduct the statute protects against. 41 U.S.C. § 4712(a)(1). For a claimant's belief to be "reasonable," it must be "objectively reasonable as a matter of law." Fuerst, 38 F.4th at 872. Furthermore, in interpreting the WPA, the Federal Circuit held the test for whether belief is reasonable is to determine whether "a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence" gross mismanagement, gross waste of funds, abuse of authority, or etc. Lachance v. White, 174 F.3d 1378, 1381 (Fed. Cir. 1999) ("White I") (interpreting 5 U.S.C. § 2302(b)(8)). See also Campbell v. Wormuth, No. 19-2395, 2022 WL 17958643 (4th Cir. Dec. 27, 2022) (adopting the disinterested observer test for WPA analysis). Furthermore, "a

purely subjective perspective of an employee is not sufficient even if shared by other employees." Id.

**a. Gross Mismanagement**

In a subsequent case, the Federal Circuit found that gross mismanagement is only properly alleged if an employee "disclose[s] such serious errors . . . that a conclusion . . . [of] err[or] is not debatable among reasonable people." Fuerst, 38 F.4th at 873 (quoting White v. Dep't of Air Force, 391 F.3d 1377, 1382 (Fed. Cir. 2004) ("White II")). Additionally, "debatable differences of opinion concerning matters are not protected disclosures." Id. Rather, protected disclosures must be "particularly egregious conduct, not run-of-the-mill policy disputes between managers and employees." Fuerst, 38 F.4th at 873. See also Fisher v. Environmental Protection Agency, 108 M.S.P.R. 296 (2008) ("'Gross mismanagement' is more than de minimis wrongdoing or negligence; it means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission.") An actual rule violation may establish reasonable belief under the statute; however, a rule violation is not required. Fuerst, 38 F.4th at 872. Plaintiff "only needs to show that [he] had (1) a reasonable belief that the information disclosed (2) was evidence of gross mismanagement." Id.

Here, taking all the pleaded facts as true, Plaintiff has properly alleged gross mismanagement related to the grant funds

the company has been provided. Plaintiff alleges Defendant Stout "manipulated his own personal leave accruals" in violation of HREA policy and hired an unqualified "personal acquaintance and neighbor" to become HREA Operations Manager without Board approval or performance evaluation, also in violation of HREA policy. ECF No. 1 at ¶¶ 15-16. The fact that these alleged actions violate company policies, which Plaintiff would have knowledge of given his role of HR Manager for nearly five years, support Plaintiff's belief was reasonable. ECF No. 1 at ¶ 7. Furthermore, both actions rise above the level of "difference of opinion" or "policy dispute" between two employees. Although Plaintiff does not specifically plead the funds used in both acts of alleged misconduct were funds from federal grants, the fact HREA has received over $20 million in federal grants from the USDA and operates under the federal Rural Electrification Act of 1935 is enough to reasonably conclude federal funds were used here. ECF No. 1 at ¶ 1. Furthermore, Defendant does not contest the use of federal funds in the alleged incidents. See ECF No. 6. For the reasons above, Plaintiff satisfies element one of the statute as to the gross mismanagement claim.

**b. Gross waste of Federal funds**

"A gross waste of funds requires more than debatable expenditures that is significantly out of proportion to the benefit reasonably expected to accrue to the government." Wen Chiann Yeh

v. Merit Sys. Prot. Bd., 527 Fed. Appx. 896, 900-01 (Fed. Cir. 2013) (interpreting the WPA).

Here, Plaintiff successfully alleges reasonable belief of gross waste of federal funds because this expenditure provides no discernible benefit to the government on the facts pled. Plaintiff alleges Defendant Stout sold a company truck worth $40,000-$50,000 to "former board president and current HREA board member Jeff Nelson" for $3,300—allegedly 7-8% of the market value. ECF No. 1 at ¶ 14. Neither party establishes any benefit conferred upon HREA resulting from the sale of the truck for $3,300, and it is not apparent to the Court Nelson would provide any further benefit to HREA through purchasing the truck for 7-8% of market value. ECF No. 1 at ¶ 14. Thus, Plaintiff has properly pled a reasonable belief of gross waste of federal funds.

**c. Abuse of Authority**

The statute defines "abuse of authority" as "an arbitrary and capricious exercise of authority that is inconsistent with the mission of the executive agency concerned or the successful performance of a contract or grant of such an agency." 41 U.S.C. § 4712(g)(1). In the context of the WPA, the Federal Circuit goes a step further, finding an abuse of authority is an exercise of power which "adversely affects the rights of any person or that results in personal gain or advantage to the official or to preferred other persons." Nelson v. Dep't of the Army, 658 Fed.

Appx. 1036 (Fed. Cir. 2016) (quoting Wen Chiann Yeh, 527 Fed. App'x at 900) (interpreting the WPA).

Here, Plaintiff properly asserts a protected disclosure of reasonable belief of abuse of authority based on the alleged fraudulent truck sale, manipulation of leave accruals, and fraudulent hiring of Chapman by Defendant Stout. ECF No. 1 at ¶¶ 19-23. In all these instances, a reasonable person could find the actions taken by Defendant Stout are (1) inconsistent with the mission of the agency and (2) provide personal gain or advantage to himself or preferred other persons.

Taking the pleaded facts as true, the hiring of Chapman and Defendant Stout's alleged manipulation of leave accruals in violation of HREA company policy is enough to raise an inference that these actions are inconsistent with the agency's mission. ECF No. 1 at ¶ 15-16. Furthermore, selling a company vehicle to a former board member for 7-8% of market value, leaving potentially $36,700-$46,700 on the table for no alleged reason, can also reasonably be considered contrary to the mission of the agency and an arbitrary and capricious practice. Id. at ¶ 14.

Moreover, all these alleged actions provided personal benefit to Defendant Stout or another preferred person. The alleged manipulation of leave accruals by Defendant Stout to provide for a $100,000 retirement payout granted him obvious personal gain. Id. at ¶ 15. The hiring of Chapman, Defendant Stout's neighbor and

acquaintance, without board approval when he was allegedly not qualified provided Chapman with personal gain. Id. at ¶ 16. Finally, selling a company truck to former board president and current member, Nelson, for 7-8% of its market value provided Nelson with personal gain. Id. at ¶ 14. For the foregoing reasons, this Court finds Plaintiff properly pled reasonable belief of abuse of authority related to federal funds.

**d. Violation of law, rule, or regulation**

Plaintiff must allege reasonable belief that his disclosure is evidence of a violation of a law, rule, or regulation related to a Federal contract or grant. 41 U.S.C. § 4712(a)(1). For a violation of law to be "related to" a federal contract there must be "an actual nexus" or an "association or connection" between the contract and the law. Ficarra v. SourceAmerica, No. 1:19-CV-01025, 2020 WL 1606396, at *4 (E.D. Va. Apr. 1, 2020) (holding that an employee's disclosure of a federal grantee underreporting profits related to a non-governmental contract did not relate to the federal grant). At the motion to dismiss stage an employee must only plead an objectively reasonable belief that the disclosed action constitutes a violation of law. Fuerst, 38 F.4th at 872.

Here, Plaintiff has sufficiently alleged reasonable belief of a violation of the Electronic Communications Privacy Act ("ECPA") of 1986 (18 U.S.C. § 2511) by Defendant Stout. The ECPA prohibits the unauthorized interception of "any wire, oral, or electronic

communication." 18 U.S.C. § 2511(1)(a). Plaintiff alleges he personally witnessed Defendant Stout using "HREA administrative tools and/or electronic devices to monitor and access HREA members' and employees' spouses' internet activity without their consent." ECF No. 1 at ¶ 17. Furthermore, Plaintiff alleges when he questioned Defendant Stout about this practice, Stout stated "I provide the internet, I can see what I want." Id. It is reasonable to believe this action constituted an intentional, unauthorized interception of an electronic communication under the ECPA.

Additionally, Plaintiff pleads "an actual nexus" between this action and the federal contract, because federal grants fund the "fiber optic infrastructure and/or installation" by which Defendant Stout was allegedly monitoring customers. Id. at ¶ 1. Unlike in Ficarra, where the Plaintiff reported conduct that related to funds provided by a non-governmental contract, Plaintiff here has reported conduct related to the funding provided by the USDA. Thus, Plaintiff has properly pled reasonable belief of a violation of law.

2. **Protected disclosure made to someone specified in § 4712(a)(2)**

Plaintiff has successfully satisfied the second element of the statute because he made a protected disclosure to HREA Board President Suan and Accounting Manager Cleghorn. Under § 4712(a)(2) of the NDAA, employees must make protected disclosures to a

specified group of people, one being "a management official or other employee of the contractor, subcontractor, grantee, subgrantee, or personal services contractor who has the responsibility to investigate, discover, or address misconduct." 41 U.S.C. § 4712(a)(2)(G).

Here, Plaintiff disclosed information regarding the allegedly fraudulent truck sale, Defendant Stout's alleged personal leave accrual manipulation, the alleged improper promotion of Ty Chapman, and the alleged violation of the ECPA to Accounting Manager Cleghorn in July 2024 and to Board President Suan on December 15, 2024. ECF No. 1 at ¶¶ 19-23, 60. While Plaintiff does not specifically plead that Suan is a "management official" in the Complaint, it would be reasonable to assume that the President of the Board of a company would be considered a management official with responsibilities to investigate misconduct, or delegate another to investigate such conduct. Additionally, Plaintiff disclosed all these incidents to Cleghorn in March 2024 and "the latter part of 2024." Id. at ¶ 19. It is reasonable to believe the accounting manager of the company would have the responsibility to investigate alleged financial misconduct. Thus, Plaintiff has satisfied element two by making a protected disclosure to a person defined in the statute.

**3. Contributing Factor**

Plaintiff has also successfully pled his protected disclosures were a contributing factor to his termination. A protected disclosure can be considered a contributing factor to termination if Plaintiff provides circumstantial evidence showing "(A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." Mikhaylov v. Dep't. of Homeland Security, 62 F.4th 862 (4th Cir. 2023) (quoting 5 U.S.C. § 1221(e)(2)).

In the context of the WPA, the Fourth Circuit has found that a "lengthy lapse between the employer becoming aware of the claimant's protected activity and the alleged adverse employment action negate[s] any inference that a causal connection existed." Hooven-Lewis v. Caldera, 249 F.3d 259, 278 (4th Cir. 2001 (finding that a six-month lag between protected activity and termination did not justify an inference of causation). See also Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (finding that a 13-month interval was insufficient to prove causal connection); Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (holding that a four-month time period between disclosure and personnel action could not prove causation).

Here, Plaintiff has sufficiently alleged that his disclosures were contributing factors to his termination. Plaintiff provides two pieces of circumstantial evidence to show Defendant Stout was aware of his disclosures. First, he asserts Cleghorn received a 10% pay increase in January 2025, after Plaintiff reiterated his concerns to her in "the latter part of 2024." ECF No. 1 at ¶¶ 19, 24. Plaintiff alleges this raise was "designed to reward Cleghorn's loyalty and/or silence and/or to incentivize her to provide information about Plaintiff's whistleblowing to GM Stout." Id. Furthermore, Plaintiff asserts Cleghorn informed Defendant Stout of Plaintiff's reports around the time of this raise. Id. Second, Plaintiff asserts on January 30, 2025, one of his coworkers asked him if he "had been demoted," Id. at ¶ 27. Plaintiff contends this incident evidences Cleghorn and Stout were discussing Plaintiff's "job status and potential termination" in January 2025. Id. At the motion to dismiss stage and in the absence of discovery, this circumstantial evidence sufficiently demonstrates Defendant Stout knew of Plaintiff's protected disclosures. Furthermore, Plaintiff was terminated on March 28, 2025, just two months after Cleghorn received a raise and Plaintiff's coworker asked about his demotion. Id. at ¶ 30. This two-month gap is much shorter than the time lapses that the Fourth Circuit has previously held to be unreasonable or insufficient to prove causation.

Plaintiff relies on the assertion that Defendant's reason for terminating him was "pretextual" as evidence of Plaintiff's protected disclosures being a contributing factor to termination, however, the Court does not consider that evidence. ECF No. 11 at p. 7. The truthfulness of the reason for termination is not a consideration under 5 U.S.C. § 1221(e). Furthermore, the Fourth Circuit has not considered whether the reason for termination was pretextual in WPA or NDAA cases. Plaintiff seems to rely on Title VII retaliation cases and the McDonnell Douglas framework to support this point. See ECF No. 11 at p. 7; Foster v. University of Maryland-Eastern Shore, 787 F.3d 243 (4th Cir. 2015). This Court does not consider this argument because the NDAA and the WPA are both governed by 5 U.S.C. § 1221(e), making the WPA a more accurate statutory comparison.

Nonetheless, Plaintiff has asserted a prima facie case of a violation of 41 U.S.C. § 4712 and this Court **DENIES** Defendant's Motion as to Count I.

**B. Defendant's Motion is GRANTED as to Count II because none of Plaintiff's claims bear a nexus to an FCA violation, thus the disclosures are not protected activity.**

This Court **GRANTS** Defendant's Motion as to Count II because Plaintiff has not properly pled protected activity under the False Claims Act ("FCA"). The FCA "is designed to discourage contractor fraud against the federal government." Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). It imposes civil liability on any

person who "'knowingly presents, or causes to be presented, [to the United States government] a false or fraudulent claim for payment or approval' or 'knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.'" United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) (citing 31 U.S.C. § 3729(a)). The FCA also includes a whistleblower provision, which creates a cause of action for

> [a]ny employee, contractor, or agent ... discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent ... in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1). To properly plead a violation of 31 U.S.C. § 3730(h), Plaintiff must plead facts that give rise to a "reasonable inference" that "(1) he engaged in 'protected activity;' (2) his employer knew about the protected activity; and (3) his employer took adverse action against him as a result." United States ex rel. Grant v. United Airlines Inc., 912 F.3d 190, 200 (4th Cir. 2018). Plaintiff must either plead acts "in furtherance of an [FCA action]" or "other efforts to stop 1 or more [FCA violations]" to adequately plead protected activity. Id. (quoting 31 U.S.C. § 3730(h)(1)). When a Plaintiff pleads they

engaged in efforts to stop FCA violations, they are subjected to an "objective reasonableness" standard. Id. at 201. The Fourth Circuit has found:

> Under this standard, an act constitutes protected activity where it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate, the FCA. A belief is objectively reasonable when the plaintiff alleges facts sufficient to show that he believed his employer was violating the FCA, that this belief was reasonable, that he took action based on that belief, and that his actions were designed to stop one or more violations of the FCA. However, while the plaintiff's actions need not "lead to a viable FCA action" as required under the distinct possibility standard, they must still have a nexus to an FCA violation.

United Airlines Inc., 912 F.3d at 201-02. Additionally, "[t]he employee's investigation must concern 'false or fraudulent claims' or it is not protected activity under the FCA." Glynn, 710 F.3d at 214. Allegations of regulatory violations are not enough "in the absence of actual fraudulent conduct." United States ex rel. Rostholder v. Omnicare, Inc., 745 F.3d 694, 702 (4th Cir. 2014) (finding failure to identify "any false statement or other fraudulent misrepresentation" made "to the government" supported dismissal of a FCA retaliation claim).

The Fourth Circuit has not elaborated on the meaning of "nexus to an FCA violation[,]" but one district court interpreted it to mean the conduct being disclosed in the protected disclosure must be "a request or demand for money or property from the United

States." Nario v. Nat'l OnDemand, Inc., No. 1:21CV711, 2022 WL 1241435, at *3 (M.D.N.C. Apr. 27, 2022) (quoting 31 U.S.C. § 3729(b)(2)(A)). See also Torres v. IAP Worldwide Servs., Inc., No. 5:21-CV-00084-M, 2025 WL 1106998, at *6 (E.D.N.C. Apr. 14, 2025) (finding Plaintiff's complaints they were not being paid enough did not "prevent fraud against the United States, so they do not constitute protected activity"). Furthermore, allegations of waste of Federal funds do not constitute fraud. Torres, 2025 WL 1106998, at * 6 ("Imprudent spending habits do not amount to 'knowing misrepresentation or knowing concealment of a material fact.'")

Defendant's Motion to Dismiss is **GRANTED** because none of Plaintiff's claims have a nexus to an FCA violation. Plaintiff does not specify which claims he believes constitute FCA violations, but Defendant identifies (1) the alleged fraudulent truck sale (2) manipulation of leave accruals by Defendant Stout and (3) the hiring of Chapman in his Motion. ECF No. 6 at p. 4. These claims will be addressed in order.

First, the truck sale in which Defendant Stout allegedly sold a former board member a company truck for 7-8% of its market value cannot constitute a false claim because Plaintiff does not allege that any false claim or fraudulent conduct related to the government regarding this sale. ECF No. 1 at ¶ 14. Plaintiff, at most, alleges waste of Federal funds, which does not rise to the level of fraud against the government which the FCA protects

against. While Plaintiff may have subjectively believed this rose to the level of an FCA violation, his belief was not objectively reasonable because these allegations do not match the contours of an FCA violation.

The allegation that Defendant Stout manipulated his leave accruals bears more of a resemblance to an FCA violation because it relates directly to company funds; however, it still does not rise to the level of an objectively reasonable belief because all that is alleged is a violation of HREA policy. ECF No. 1 at ¶ 15. Plaintiff has alleged no fraudulent conduct or statement towards the government, rather a misuse of funds already provided. Given violations of FDA safety regulations cannot constitute an FCA claim on their own, internal policy violations related to leave carryover on their own surely do not constitute the level of fraud described in the FCA. ECF No. 1 at ¶ 15. See Rostholder, 745 F.3d at 702 ("Allegations of regulatory violations fail to support FCA liability . . . FCA liability based on a false certification to the government will lie only if compliance with the statutes or regulations was a prerequisite to gaining the benefit, and the defendant affirmatively certified such compliance.") (internal citations and quotations omitted). Here, Plaintiff clearly alleges Defendant Stout is simply ignoring HREA policy, rather than pretending he is complying with them. ECF No. 1 at ¶ 15. Plaintiff alleges Defendant Stout stated "he was the CEO and was not subject

to the policies." Id. While this is an unfavorable practice, it is not an allegation that Stout claimed to be following a policy that he was in fact not following. Thus, Plaintiff's subjective belief is not objectively reasonable here.

As to the hiring of Chapman, this also cannot constitute an FCA violation because Plaintiff has merely alleged a violation of HREA policy, which again is not fraudulent conduct directed at the government. ECF No. 1 at ¶ 16. There is no indication Defendant Stout lied about Chapman's qualifications to the government, or that the government even required Chapman to have the experience that HREA requires. Again, Plaintiff's subjective belief is not objectively reasonable here.

As discussed in Count I, Plaintiff has provided enough information to bring about a reasonable inference that Defendant Stout knew of these disclosures and Plaintiff was fired two months later as a result of that; however, the failure to show the allegations have a nexus to an FCA violation prevents these disclosures from being considered "protected activity" under the statute. ECF No. 1 at ¶¶ 14-16. Therefore, this Court **GRANTS** Defendant's Motion as to Count II.

**C. Defendants Motion is GRANTED as to Counts III and IV because Plaintiff has failed to identify a substantial source of public policy to base his Harless claims upon.**

Plaintiff's Harless claims are fatally flawed because he fails to identify a substantial source of public policy that has

been breached, and the NDAA and FCA have private rights of action. "In West Virginia, an employment relationship of indefinite duration is 'presumed to be terminable at any time at the will of the employer or of the employee, with or without cause.'" Jackson v. Vaughn, No. 1:15CV128, 2015 WL 6394510, *2 (N.D.W. Va. Oct. 22, 2015) (Keeley, J.) (citation omitted). However,

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., Harless v. First Nat'l Bank of Fairmont, 246 S.E.2d 270 (W.Va. 1978). To succeed on a Harless retaliatory discharge claim, a plaintiff must prove: (1) "[t]hat a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law"; (2) "[t]hat dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; (3) "[t]he plaintiff's dismissal was motivated by conduct related to the public policy"; and (4) "[t]he employer lacked overriding legitimate business justification for the dismissal." Burke v. Wetzel Cnty. Comm'n, 815 S.E.2d 520, 537 (W.Va. 2018). "The determination whether a substantial public policy exists is a

question of law for the court." Frohnapfel v. ArcelorMittal Weirton LLC, 100 F. Supp. 3d 556, 562–63 (N.D.W.Va. 2015).

Federal courts in West Virginia have noted the Supreme Court of Appeals has intentionally read Harless narrowly. See Baisden v. CSC-PA, Inc., No. 2:08-cv-01375, 2010 WL 3910193, at *5 (S.D.W.Va. Oct. 1, 2010) (writing "the West Virginia Supreme Court of Appeals . . . has read Harless narrowly so as not to 'unlock a Pandora's box of litigation in the wrongful discharge arena'"). See also Wiley v. Asplundh Tree Expert Co., 4 F.Supp.3d 840, 847 (S.D.W.Va. 2014) (stating "[t]his Court has previously declined to recognize a new type of Harless claim ... because the West Virginia Supreme Court has interpreted Harless so narrowly"). The United States District Court for the Southern District of West Virginia, in finding Harless claims do not extend to plaintiffs who are covered by collective bargaining agreements, wrote that "[a]ny expansion of the claim is best left to the West Virginia courts." Fugate v. Frontier W. Va., Inc., No. 2:17-cv-00559, 2017 WL 3065216, at *2 (S.D.W.Va. July 19, 2017).

**a. NDAA (41 U.S.C. § 4712) and FCA (31 U.S.C. § 3730) claims**

Defendant's Motion is **GRANTED** as to Plaintiff's Harless claims under the NDAA and the FCA because both statutes have a private right of action. If the public policy "is enforceable by a statutory cause of action" then filing a Harless claim is excessive. Jackson at *3. "When a statutory scheme provides a

private cause of action to ensure compliance with its underlying public policy objectives, that statutory cause of action cannot be displaced by a Harless style common law tort action." Id. (citation omitted).

Here, both statutes have a private right of action, evidenced by the fact that Count I and Count II of Plaintiff's Complaint are brought under these statutes. See ECF No. 1. See also 41 U.S.C. § 4712(c)(2) ("If the head of an executive agency issues an order denying relief . . . the complainant may bring a de novo action at law or equity against the contractor."); 31 U.S.C. § 3730(h)(1) ("Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole . . . .") Thus, this Court **GRANTS** Defendant's Motion as to Plaintiff's Harless claims under the NDAA and the FCA.

**b. WV Public Employee Whistleblower Law – W.Va Code § 6C-1-1**

Plaintiff's Harless claim under West Virginia Whistleblower Law (W.Va. Code § 6C-1-1) is dismissed because the statute only applies to public employees and Plaintiff is a private employee.[4] The Supreme Court of Appeals of West Virginia has found "if whistleblower protections are to be extended to [private employees under § 6C-1-1], that expression of public policy should be made by the legislature-not the Court." Blanda v. Martin & Seibert,

[4] W.Va. Code 6C-1-1 is listed in the "Public Employees" chapter of West Virginia Code. See W.Va. Code § 6C-1-1.

L.C., 836 S.E.2d 519, 529 (W. Va. 2019)(holding a private employee could not avail herself of the protections of West Virginia Whistleblower law as it pertains solely to public employees).

Plaintiff does not contest that he is a private employee. See ECF No. 11. Thus, this Court **GRANTS** Defendant's Motion as to Plaintiff's claim under § 6C-1-1.

**c. Criminal statutes prohibiting fraud and misappropriation/ Federal and state laws governing proper use of government funds/ Common law principles protecting those who report unlawful conduct**

Plaintiff's miscellaneous claims under unspecified criminal statutes, federal and state laws, and common law principles are dismissed. Plaintiff must specifically identify the source of substantial public policy he intends to base his Harless claim upon. Figlar v. Simonton Windows & Doors, Inc., No. 1:23-CV-30, 2024 WL 389236, at *6 (N.D.W.Va. Feb. 1, 2024). Moreover, as this Court has stated

> it is incumbent upon a plaintiff to identify the source of the substantial public policy allegedly supporting a Harless cause of action. Given the skepticism trial courts must deploy in identifying new Harless theories, the Court should not – and, here, will not – seek out that which Plaintiff herself failed to identify.

Id. Furthermore, Plaintiffs, "need to specify the source of legal authority that recognizes that a substantial West Virginia public policy as a matter of law at stake in this case." Wiley v. Asplundh Tree Expert Co., 4 F.Supp.3d 840, 845 (S.D.W.Va 2014).

Here, Plaintiff alleges his Harless claim can be premised upon unspecified "criminal statutes prohibiting fraud and misappropriation," "federal and state laws governing proper use of government funds," and "common law principles protecting those who report unlawful conduct," in addition to those already alleged. ECF No. 1 at ¶ 54. Defendant points out that it is the Plaintiff's burden, rather than the Court's, to specify the source of substantial public policy. ECF No. 6 at p. 15. Plaintiff argues although he hasn't identified any specific statute or area of common law, he has alleged conduct that "implicates specific legal rules against fraud, misappropriation, and misuse of funds," rather than abstract ethics. ECF No. 11 at p. 12. Nonetheless, Plaintiff has not identified which criminal statutes, additional federal or state laws, or common law principles he settles his claim on. See ECF No. 1. While he identifies conduct that may implicate some substantial public policy, his failure to identify what that public policy is requires his claim to fail as a matter of law.

**d. HREA's whistleblower policy**

Plaintiff's claim that HREA's internal whistleblower policy creates substantial public policy which a Harless claim can be based upon is also dismissed because there are no instances where federal or state courts have based a Harless claim on internal business policies. "[T]o identify the sources of public policy for

purposes of determining whether a retaliatory discharge has occurred, . . . [courts] look to established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions." Syl. Pt. 2, Birthisel v. Tri-Cities Health Services Corp., 424 S.E.2d 606 (W.Va. 1992). Internal business policies have not been included in this rule by state or federal courts. See e.g. Harshbarger v. CSX Transp., Inc., 478 F. Supp. 2d 890, 895 (S.D.W.Va. 2006) ("Plaintiff has failed to allege a viable claim that Defendant has violated public policy by allegedly failing to comply with its own internal policies."); Suddreth v. Maurices Inc., No. 5:11-CV-00389, 2012 WL 275393, at *3 (S.D.W.Va. Jan. 31, 2012) ("The focal point of this cause of action is not the internal workings or policies of an employer . . . but rather whether a public policy exists as 'established precepts in our constitution, legislative enactments, legislatively approved regulations, and judicial opinions.'")

Plaintiff's purported reason for asserting a claim under this internal policy is the policy furthers the idea that West Virginia has a public policy against fraud related to "publicly owned entities and federal funds." ECF No. 1 at ¶ 54. There does not appear to be any case law accepting this argument. Thus, the Court rejects it and dismiss Plaintiff's claim.

**e. ECPA – 18 USC § 2511(4)**

Plaintiff's Harless claim under the ECPA is dismissed because he again fails to identify a source of substantial public policy for the claim to rest on. Although Plaintiff relies on a specific federal statute in this claim (18 U.S.C. § 2511), he fails to show any instances where West Virginia or federal courts have identified this statute as a source of substantial public policy. See ECF No. 1 at ¶¶ 59-61; ECF No. 11 at p. 12-14. Additionally, the Supreme Court of Appeals of West Virginia has only recognized statutory provisions as substantial public policy when the statute clearly discusses public policy. As stated in Blanda,

> As this Court made clear in Swears v. R.M. Roach & Sons, Inc., 225 W.Va. 699, 696 S.E.2d 1 (2010), a Harless-based action requires more than simply raising the spectrum of a potentially governing law. "The mere citation of a statutory provision is not sufficient to state a cause of action for retaliatory discharge without a showing that the discharge violated the public policy that the cited provision clearly mandates."

Blanda, 836 S.E.2d at 527 (quoting Swears, 696 S.E.2d at 7). The ECPA does not explicitly refer to public policy considerations. See 18 U.S.C. § 2511.[5]

[5] Defendant makes several arguments for the dismissal of this claim aside from the failure to identify substantial public policy such as that invasion of privacy is an individual action not a public action, and that Plaintiff fails to plead facts sufficient to provide relief upon. ECF No. 6 at p. 15-17. However, this Court need only address the first argument, as it is dispositive. See Tritle v. Crown Airways, Inc., 928 F.2d 81, 84 (4th Cir. 1990) ("[we] hold that a state claim which has not been recognized by that jurisdiction's own courts constitutes a

Plaintiff's primary argument in response to the assertion that he has cited no substantial public policy source is the ECPA itself shows there is a broad public interest in "privacy and lawful limitations on the use of network-control tools." ECF No. 11 at p. 13. However, a federal statute alone is not enough to create substantial public policy without the discretion of West Virginia state courts, in most cases.

In Farrell v. Mon Health Care, Inc., this Court found HIPPA could be a source of substantial public policy, although neither state nor federal case law had acknowledged it as such. Farrell v. Mon Health Care, Inc., No. 1:23-CV-60, 2025 WL 2740394, at *9 (N.D.W.Va. Sept. 25, 2025). This claim rested on Defendant's concession that West Virginia has an interest in preventing medical record disclosure, as defined by case law. Id. Here, Plaintiff has failed to identify any case law demonstrating West Virginia has an interest in preventing violations of privacy rights and illegal surveillance. See ECF No 1 at ¶¶ 59-61; ECF No. 6 at p. 17-18; ECF No. 11 at p. 12-14. Because Plaintiff fails to meet his burden of identifying a source of substantial public policy, his Harless claim under the ECPA fails as a matter of law.

Furthermore, Defendant's Motion is **GRANTED** as to all Plaintiff's Harless claims.

---

settled question of law, which will not be disturbed by this court absent the most compelling of circumstances.")

**D. Defendant's Motion is GRANTED for Breach of Implied Employment Contract [Count V] because HREA policies constitute only "aspirational goals" under Younker.**

Plaintiff's Breach of Implied Contract claims is dismissed because he fails to plead the creation of an implied contract. Under West Virginia law, generally at-will employment is terminable at any time. Younker v. Eastern Associated Coal Corp., 591 S.E.2d 254, 257 (W.Va. 2003). However, "contractual provisions relating to discharge or job security may alter the at-will status of a particular employee." Id. (quoting Bailey v. Sewell Coal Co., 437 S.E.2d 448, 451 (W.Va. 1993)). Representations made in an employee handbook "can meet the normal requirements for formation of an implied contract" necessary to alter such status. Id. See also Cook v. Heck's Inc., 342 S.E.2d 453 (W.Va. 1986) ("An employee handbook may form the basis of a unilateral contract if there is a definite promise therein by the employer not to discharge covered employees except for specified reasons.") "Any promises alleged to alter the presumptive relationship must be very definite to be enforceable." Id.

The Supreme Court of Appeals for West Virginia held an employee handbook containing "specified discipline for violations of particular rules accompanied by a statement that the disciplinary rules constitute a complete list is prima facie evidence of an offer for a unilateral contract of employment modifying the right of the employer to discharge without cause."

Cook, 342 S.E.2d at 459. On the other hand, the court has found an employee handbook containing merely "aspirational goals" and a provision stating the handbook is not an exclusive list of company rules does not constitute a unilateral contract. Younker, 591 S.E.2d at 259.

In Younker, the Court found Defendant's Code of Conduct contained merely aspirational goals when it stated:

> All employees are encouraged and obligated to report any known or suspected Code violations to the employee's supervisor and the appropriate Counsel. No disciplinary or other retaliatory action will be taken against an employee making such a report and all information provided will be maintained in the strictest confidence.

Id. at 257. The first issue this Court must address is whether it can consider the relevant HREA policies attached to Defendant's Motion. On a motion to dismiss, the Court may consider documents "integral and explicitly relied on in the complaint" without converting a motion to dismiss into a motion for summary judgment. Robinson, 551 F.3d at 222-23. Furthermore, a court "may consider a document submitted by the movant that was not attached to or expressly incorporated in the complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted).

Plaintiff contests this Court's consideration of the Board Policies filed by the Defendant because they are not "integral" to the Complaint. ECF No. 11 at p. 15. However, these policies are specifically referenced in the Complaint and form the basis of Plaintiff's breach of implied contract claim. ECF No. 1 at ¶¶ 65-66. Plaintiff's assertion that the specific language of these documents cannot be considered in the way Defendant suggests is unfounded. ECF No. 11 at p. 15. West Virginia law only considers an employee handbook or internal policies to create an implied contract if it contains language that constitutes a "very definite" promise. There is no state case law to support a breach of contract claim based on the "absence of a clear at-will disclaimer and the existence of specific procedural and substantive constraints on termination," as Plaintiff suggests Id. at p. 16. Thus, this Court can consider the HREA policies attached to Defendant's Motion. See ECF No. 5 at Ex. 1-5.

This Court **GRANTS** Defendant's Motion as to Count V. First, HREA's whistleblower policy mirrors that of the policy in Younker, which only amounted to "aspirational goals." HREA's whistleblower policy contains a retaliation provision which states, "[t]his policy is intended to encourage and enable employees to raise Concerns for prompt internal investigation and appropriate action. **No employee who in good faith reports a Concern shall be subject to retaliation in any form for making a report**." ECF No. 5 at Ex.

C. This language mirrors the language in Younker, which was not enough to create a unilateral contract. See Younker, 591 S.E.2d at 257. Furthermore, HREA's Progressive Discipline Policy states twice "the aforementioned list [of terminable offenses] is not an all inclusive list of potential offenses." ECF No. 5 at Ex. A. Given the non-exclusivity disclaimer and language that mirrors Younker, the policies Plaintiff bases his claim upon do not meet the "very definite" standard required for an implied contract to be created. Therefore, this Court **GRANTS** Defendant's Motion as to Count V.

**E. Defendant's Motion is DENIED as to Promissory Estoppel [Count VII] because Plaintiff has properly pled detrimental reliance.**

Plaintiff's Promissory Estoppel claim survives Defendant's Motion because Plaintiff has properly pled detrimental reliance on an employer's promise under West Virginia's sparse law in this area. Employers may, in some circumstances, be bound by promises they make to their employees. See Cook, 342 S.E.2d 453. To establish a permanent employment contract or other substantial employment rights, Plaintiff must show either an "express promise by the employer or by implication from the employer's personnel manual, policies or custom and practice." Tiernan v. Charleston Area Med. Ctr., Inc., 575 S.E.2d 618, 624 (W.Va. 2002) (per curiam) (citation omitted). Here, Plaintiff must establish HREA (1) "made an express promise [or implied promise from employee policy or

procedure], (2) "that [HREA] intended or reasonably should have expected that such a promise would be relied and/or acted upon" by Plaintiff, and (3) that Plaintiff, "being without fault of [himself], reasonably relied on that promise," leading to his discharge, and (4) "in discharging [Plaintiff, HREA] breached that promise." Id. at 625.

Two West Virginia cases address similar situations to Plaintiff's. In Tiernan, a Plaintiff prevailed on her promissory estoppel claim against her employer because she was verbally promised she "had every right to speak to newspaper reporters" and she "would not [be retaliated against] if [she] chose to speak up," but was fired after relying on such promise. Tiernan, 575 S.E.2d at 624. The Supreme Court of Appeals for West Virginia found this promise established a substantial employment right not to be fired for speaking to reporters. Id. at 625.

In Hatfield v. Mgmt. Assocs. Of W. Va., a Plaintiff could not prevail on her promissory estoppel claim when she asserted her employer breached its promise by firing her four days into employment. 672 S.E.2d 395, 401-02 (W.Va. 2008). She based this claim on the employment offer she signed, which had no promise of permanent employment. Id. Furthermore, she acknowledged she knew she was an at-will employee. Id. Although she detrimentally relied on the employment offer, she could not prevail because she knew she was an at-will employee, making the reliance unreasonable. Id.

Notably, Tiernan relates to the breach of a specific promise by an employer, while Hatfield relates to the alleged breach of an offer of employment that clearly was at-will. In this case, Plaintiff's situation is more closely aligned with Tiernan, as it relates to specific promises by an employer, rather than an overall employment offer. Following Tiernan, Plaintiff's status as a presumed at-will employee is not relevant to this claim.

Plaintiff alleges Defendant promised Plaintiff would (1) "be subject to termination for legitimate, non-retaliatory reasons," (2) "receive procedural protections including board approval for position elimination," (3) "be protected from retaliation for reporting fraud, waste, abuse, and unlawful activity," and (4) "receive sick leave and compensation benefits as provided in HREA policies," through employment policies, established procedures, compensation polices, and whistleblower protections. ECF No. 1 at ¶ 75.

Given Plaintiff alleged these promises appear in more than just HREA policies and Tiernan allowed a Plaintiff to succeed on specific promises separate from the at-will employment distinction, it would be premature to find Plaintiff is completely unable to be afforded relief on this claim. Plaintiff alleged promises implied through employment policies and procedures and that Defendant expected reliance on these procedures by "continuing [Plaintiff's] employment, performing his duties, and

reporting misconduct internally rather than to external authorities." ECF No. 1 at ¶¶ 75-76. Additionally, Plaintiff alleges he reasonably and foreseeably relied on Defendant's promises by "remaining employed with HREA for nearly five years; declining or foregoing other employment opportunities; reporting fraud, misuse of federal funds, and illegal surveillance through internal channels; and continuing to perform his duties in reliance on promised protections and procedures." Id. at ¶ 77. Furthermore, Plaintiff alleges a breach of these promises by Defendant when Plaintiff was terminated without board approval and terminated under allegedly false pretenses. Id. at ¶ 79.

Looking to the Whistleblower Policy, which Defendant has provided, Plaintiff was promised "[t]his policy is intended to encourage and enable employees to raise Concerns for prompt internal investigation and appropriate action. **No employee who in good faith reports a Concern shall be subject to retaliation in any form for making a report**." ECF No. 5 at Ex. C. This promise is comparable to the one upheld in Tiernan.

Defendant contends the promissory estoppel claim is also subject to the Younker standard which requires a "very definite" promise, citing cases from the Southern District of West Virginia which apply that standard to promissory estoppel claims. ECF No. 6 at p. 18-19; Younker, 591 S.E.2d at 257. However, the only West Virginia promissory estoppel case in this area of law following

the Younker decision did not apply the Younker rules, as implied contract and promissory estoppel are two distinct legal doctrines. See Hatfield, 672 S.E.2d 395. Although Younker does address promissory estoppel in a footnote, the denial of Plaintiff's claim relates to the fact he did not plead reliance on Defendant's employment policies, not the definiteness of the promise. Younker, 591 S.E.2d 254, n. 8. This Court does not apply the Younker standard to Plaintiff's promissory estoppel claim because West Virginia law does not suggest it applies here.

When the Younker standard does not apply, it is inapplicable whether the whistleblower policy constitutes "aspirational goals," as Defendant suggests. ECF No. 6 at p. 19-20. Furthermore, this Court allows Plaintiff to move forward with discovery on this claim given proper pleading of all the elements. Thus, Defendant's Motion is **DENIED** as to Count VII.

**F. Defendant's Motion is GRANTED in part and DENIED in part as to Plaintiff's claims under the West Virginia Wage Payment and Collection Act ("WV WPCA").**

Plaintiff's claim for sick leave reimbursement is dismissed because HREA board policy clearly does not provide for reimbursement, but his claim for work-related mobile phone use reimbursement survives. Under the WV WPCA, the term "wages" is defined as "[c]ompensation for labor or services rendered by an employee, whether the amount is determined in a time, task, piece, commission or other basis of calculation. . .. [T]he term "wages"

shall also include then accrued fringe benefits capable of calculation and payable directly to an employee." W. Va. Code § 21-5-1(c). "Fringe benefits" is defined as "any benefit provided an employee or group of employees by an employer, or which is required by law...." W. Va. Code § 21-5-1(l).

Whether reimbursement for work-related mobile phone use and sick leave pay are considered "fringe benefits" included in "wages" under the WV WPCA is determined by the terms of employment, not the WPCA. Wolfe v. Adkins, 725 S.E.2d 200, 204 (W.Va. 2011). See also Meadows v. Wal-Mart Stores, Inc., 530 S.E.2d 676, 689 (W.Va. 1999) ("Accordingly, the terms of the applicable employment policy, and not the WPCA, determine whether fringe benefits are included in the term 'wages' under W. Va. Code. § 21-5-1(c).") "Terms of employment" includes a written employment agreement, but also includes "the employer's personnel handbook or manual, personnel policy materials, memoranda and documents intended to be used by employers in establishing the benefits of their employees." Wolfe, 725 S.E.2d at 205 (citing Younker, 591 S.E.2d at 254).

**a. Sick leave**

West Virginia law is clear "where there is no provision in a written employment agreement, personnel handbook, personnel policy materials or employer documents granting employees payment for unused, accumulated sick leave upon termination from employment, the unused accumulated sick leave, upon termination from

employment is not a vested, nonforfeitable fringe benefit . . . and is not payable to the employees." Wolfe, 725 S.E.2d at 207.

Plaintiff specifically relies on HREA's sick leave policy in the Complaint. ECF No. 1 at ¶ 71. Defendant provides the sick leave policy, which lacks any provision granting employees accrued sick leave at termination, defeating Plaintiff's claim he is entitled to sick leave reimbursement under the WV WPCA. ECF No. 5 at Ex. D. Plaintiff alleges because another employee was paid sick leave and he was not, he is entitled to sick leave, despite there being no such provision in the policy. ECF No. 11 at p. 17-18. Plaintiff cites no case law that overcomes the Wolfe rule. Thus, Defendant's Motion is **GRANTED** as to Plaintiff's request for sick leave.

**b. Mobile phone use**

Plaintiff further alleges he is entitled to payment for work-related mobile phone use. ECF No. 1 at ¶ 70. Plaintiff expressly relies on Board Policy 209 in the Complaint. Id. Defendant asserts the policy, which he attaches to his Motion, is "outdated" and does not refer to mobile phone use. ECF No. 6 at p. 21.

Whether the policy is truly "outdated" is not a distinction this Court can make on a motion to dismiss because this is a subjective distinction, not supported by additional facts. The policy is labeled "Payment of Employee Phone Bills" and its objective is "to establish a procedure for payment of on-call employees phone bills." ECF No. 5 at Ex. E. Although the policy

does not explicitly state "all managers would be compensated," as Plaintiff alleges, it does state "the Cooperative will pay the basic phone service for the following employees: (1) all non-union management employees, (2) all on-call union employees as specified in the union contract." ECF No. 1 at ¶ 70; ECF No. 5 at Ex. E.

Plaintiff has sufficiently alleged he "used his personal mobile phone for work-related purposes" and is entitled to reimbursement for his mobile phone use based on the terms of his employment for the purposes of this motion. ECF No. 1 at ¶ 70. See also McDougal v. G&S Tobacco Dealers, LLC, No. 1:08CV173, 2009 WL 10675160, at *2 (N.D.W.Va. Mar. 26, 2009) (Keeley, J.) (finding a Plaintiff had sufficiently pled a claim under WV WCPA on a motion to dismiss when he pled "the reimbursement of mileage and other expenses is compensation due him because of his job requirements"). Thus, Defendant's Motion is **DENIED** as to Plaintiff's claim for work-related mobile phone use under the WV WCPA.

**G. Counts II and III of Plaintiff's Complaint are dismissed with leave to amend and Counts IV and V and part of Count VI are dismissed with prejudice.**

Counts II and III are dismissed with leave to amend and Counts IV, V, and part of Count VI are dismissed with prejudice because amendment would be futile. "The law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"

Aljizzani v. Middle E. Broad. Networks, Inc., 178 F.4th 863, 871 (4th Cir. 2026) (citation omitted).

Here, there are "fundamental deficiencies in [P]laintiff's theory of liability" for Counts IV, V and part of Count VI and amendment would be futile. Cozzarelli v. Inspire Pharms. Inc., 549 F.3d 618, 630 (4th Cir. 2008). For Count IV, the ECPA does not expressly provide for a public policy consideration, making a Harless claim under it futile. See 18 U.S.C. § 2511; Blanda, 836 S.E.2d at 527. Regarding Count V and Plaintiff's claim for sick leave in Count VI, Defendant has provided the HREA policies Plaintiff relies upon, which clearly do not support the propositions Plaintiff asserts as a matter of law. See ECF No. 1 at ¶¶ 62-70; ECF No. 5 Ex. A-E. Plaintiff merely contests dismissal with prejudice and states his claims could be substantiated by discovery, without identifying how these pleading deficiencies could be remedied. ECF No. 11 at p. 20.

For Counts II and III, however, amendment would not be prejudicial to Defendants, there does not appear to be bad faith, and amendment is not entirely futile. Count II fails to assert a false claim for payment to the government. It is not certain Plaintiff would be unable to remedy this deficiency. Similarly, in Count III, Plaintiff fails to specify substantial public policy in one portion of the claim, merely citing a spectrum of federal statutes and common law principles. ECF No. 1 at ¶ 54. Plaintiff

could remedy this claim by being more specific about the public policy he aims to base these claims on. Thus, dismissal with prejudice is not warranted.

## V. CONCLUSION

For the reasons discussed, this Court **GRANTS** in part and **DENIES** in part Defendant's Motion [ECF No. 5] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, **DISMISSING** Counts II and III with leave to amend and **DISMISSING WITH PREJUDICE** Counts IV and V and part of Count VI, relating to Plaintiff's claim for reimbursement of sick leave.

Thus, the surviving Counts are Count I, Count VII, and Count VI as to Plaintiff's claim for reimbursement on work-related mobile phone use under the WV WCPA.

It is so **ORDERED**

The Clerk shall transmit copies of this Order to counsel of record by electronic means.

**DATED:** September 30, 2026

______________________________
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA